UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


SAMUEL HARVEY                                         CIVIL ACTION

VERSUS                                               NO. 08-3850

NURSE ANN THOMPSON ET AL.                            SECTION "C" (2)


**REPORT AND RECOMMENDATION**

Plaintiff, Samuel Harvey, was a prisoner formerly incarcerated in the Orleans Parish Prison system ("OPP") in New Orleans, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against OPP nurse Ann Thompson, a lieutenant also named Thompson, and OPP Deputies Burns, Clayton and Scott. In his original complaint, Harvey alleged that defendants failed to provide him with adequate medical care while incarcerated in OPP in late 2007 through early 2008, after Nurse Thompson stated that plaintiff was "faking my illness." Record Doc. No. 1 (Complaint at ¶ IV). Harvey subsequently expanded his allegations to include claims that he had been verbally harassed and subjected to excessive force by Deputy Burns on March 1, 2008. Record Doc. No. 19 (Plaintiff's Written Statement of Facts. He seeks damages and injunctive relief. Record Doc. No. 1 (Complaint at ¶ V).

On September 25, 2008, I conducted a conference in this matter. Participating were plaintiff pro se (in person) and Tim Richardson and Monique Morial (via

telephone), counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## **THE RECORD**

Harvey testified that he was incarcerated at OPP at the time of the incidents on which he bases his claims on a simple burglary charge for having entered an inhabited dwelling. He stated that he was arrested on this charge on July 8, 2007, and was incarcerated in OPP from that day until March 2008. Harvey testified that he plead guilty to the charge on March 8, 2008, was sentenced to three years probation, a fine and three years suspended sentence, and he was released on that date on probation.

Harvey testified that he was transferred from the Templeman V unit of OPP to "tent city" at OPP in October 2007. He stated that one day during October 2007 he "blacked out" in OPP and injured himself. He said that on that day he was located in "Tent 4," a temporary facility set up by FEMA to house up to 100 OPP inmates after Hurricane Katrina. He testified that he woke up that morning, ate breakfast and returned to his bunk to lay down. He said his head began to hurt, and he woke up at about 9:00 a.m. feeling bad. He stated that he complained to the deputy on duty that he was feeling bad, but was told that it was a weekend and that no medics were on duty. He said Deputy Burns was the deputy on duty and that Deputy Burns became upset when Harvey complained about feeling bad.

Harvey testified that "all of a sudden, I just blacked out . . . I fell out the bed, face forward . . . and when I came to . . . several seconds later, I heard other inmates saying . . . they need to call medics." He stated that Burns did not come to the tier immediately and remained in the security booth, communicating with the inmates through a speaker system, while Harvey laid on the floor for 20 to 30 minutes before Lt. Thompson, the ranking officer on duty, arrived at the scene. Plaintiff stated that Lt. Thompson told him to lie still, until about ten minutes later, when two nurses arrived. Harvey testified that the nurses lifted him and put him in a wheelchair, and he was taken to Tent 1, where "sick call was set up." He said that in Tent 1, his vital signs were taken. Harvey testified that he bruised his forehead and knees in the fall and injured his back. He said he was given a couple of aspirins or Tylenol after his vital signs were checked, but he was sent back to the tier, despite the pain in his back.

Harvey confirmed during the hearing that he had received the medical records produced by defendants in response to my order. Record Doc. Nos. 6 and 23. He testified that he suffered "several incidents" during his incarceration in OPP. He stated, for example, that Nurse Thompson made a statement about a month before the blackout incident that Harvey was faking chest pains and had told some of the deputies that there was nothing wrong with him.

Harvey could not confirm the accuracy of his OPP medical records. He testified that he suffers with depression, stress and anxiety and has both physical and mental disabilities, including that he is a diabetic. He confirmed that the medical records contain a notation dated July 13, 2007, shortly after his arrest, stating "altered loss of consciousness versus malingering." He alleged that Nurse Thompson falsely concluded and noted in his records that he was faking his injury.

Harvey testified that before his arrest he was taking insulin for diabetes and was being treated for numerous other physical and mental problems. He confirmed the references in the medical records that, although he was seen several times by nurses at OPP, he was seen "two or three times at the most" by a doctor in OPP. He stated that the first doctor who saw him was "pretty much sympathetic," and "I was treated fairly by him." He testified that the first time he saw a doctor was after his October 2007 blackout. He said the doctor "gave me some medication" for high blood pressure and referred him to see a psychiatrist. He confirmed that he saw a psychiatrist at OPP shortly thereafter.

Harvey testified that he was also sent to see Dr. Gautreaux at OPP, but "he was a mean person . . . he looked down on me . . . he cursed at inmates. . ." He complained that Dr. Gautreaux sometimes rejected his sick call requests. He testified that he blacked out three times during his OPP incarceration.

He confirmed the references in the medical records that from time to time in OPP he was provided with Ibuprofen for pain, Zantac (also know as Renitidine) for digestive problems, and Verapimil for his heart and high blood pressure. He stated that while he was incarcerated he did not have problems with high blood sugar levels; instead, he said, his blood sugar levels were low. He also confirmed a reference in the medical records that he was given "at least three EKG readings" at the House of Detention unit ("HOD") of OPP during his incarceration.

Harvey testified that his basic complaint is that "I wasn't taken seriously. I was labeled as . . . faking my injuries." He said he thought his blackouts were related to the stress, anxiety and depression he was suffering, and that the psychiatrist who was seeing him at OPP confirmed that was a possibility. "I've been having a rough five years," he said.

In his written submissions, Harvey alleged that he was attacked without justification by defendant Burns. Specifically, he alleged that on March 1, 2008, "I was asleep in my rack," when "I felt someone pulling on my blanket. It was Deputy Burns." Record Doc. No. 19 (Plaintiff's Statement of Facts at p. 3). Harvey alleged that when he woke up and asked Burns what he was doing, Burns "attacked m(e) by jumping on top of me injuring my back and leg, right shoulder." Id. As to this incident, he testified that "I was so abused by the system," but he did not want to include all of that in his lawsuit.

He stated that he had gone to sick call on the morning of March 1, 2008 and taken his medication for depression and pain. He said he laid down and suddenly felt Deputy Burns tugging at his blanket. He testified that as he opened his eyes he saw Burns, who had a bad attitude toward him because of the October 2007 blackout incident. He said that Burns had frequently made nasty and derogatory remarks to him. Harvey testified that Burns said he had been directed to take away the inmates' heavier blankets and substitute lighter blankets, but that other inmates' blankets were not taken and that he was singled out. Harvey testified that Burns jumped "on top of me . . . grabbing me around the neck. . . grabbing at my wrists, trying to put handcuffs on me." He said Deputy Mallory told Burns that it was unnecessary to attack him. He said he was handcuffed after a struggle with Burns and taken to "control," where he was questioned.

Harvey said the scuffle with Burns "went on some minutes . . . anywhere between three to four minutes." Asked what injuries he suffered in the incident, he said "I hit my back up against the rack" and "twisted my back." Harvey confirmed that he resisted Burns when Burns tried to take his blanket, and they scuffled. He alleged that Burns tried to take his blanket because Burns did not like Harvey and got mad when another inmate yelled at him. Harvey said his face was bruised, but no blood was shed and no bones were broken in the incident with Burns. He said his back, wrists and face were bruised and "sprained." He said he was taken to see a nurse after the incident.

In his written submissions, Harvey specifically complained about an alleged failure of Dr. Gautreaux to provide him with medical care. Specifically, he alleged that on February 22, 2008, he suffered another blackout and was taken to the HOD medical unit. He complained that his vital signs were not taken at that time, that Dr. Gautreaux refused to give him any pain medication, and that Dr. Gautreaux told him "to get my stupid ass out of his office" and accused him of "faking my sickness." Record Doc. No. 19 (Plaintiff's Statement of Facts at p. 4).

During his testimony, Harvey explained that after his February 2008 blackout, Dr. Gautreaux was on duty that night, working in the HOD medical unit. Harvey said he was taken in a wheelchair to be seen by Dr. Gautreaux. He said that the doctor checked his vital signs, then said "I'm done with you." He complained that the doctor was giving him no treatment for his blackout, but the doctor told him "get out my office." He said they exchanged curses. He alleged that the doctor did not treat him and verbally abused him before he was transferred back to the facility where he was being held. Harvey said he was placed back on the sick call list the next day, but Dr. Gautreaux once again denied him a sick call visit, and that he was later denied treatment again by Dr. Gautreaux. He alleged that this was "life-threatening" and that he could have been seriously injured during his incarceration.

The verified OPP medical records confirm the essential elements of plaintiff's testimony, including his examination by doctors and nurses, as he testified; the administration of various medications and tests, including electrocardiograms. The medical records also contain "Physician's Notes" dated February 22, 2008, in which the doctor made a "malingering" assessment after one of plaintiff's blackouts, followed by a nurse's note in response to a February 26, 2008 "sick call request" that "Inmate was seen by doctor on 2/22/08 for this complaint. Per doctor orders, no treatment needed." Record Doc. No. 23.

## ANALYSIS

### I.   STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are

clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."  Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute

a plaintiff's testimony at a <u>Spears</u> hearing." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" <u>Gobert v. Caldwell</u>, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting <u>Banuelos v. McFarland</u>, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269. A prisoner's in forma pauperis

complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a claim under the broadest reading.[1]

II.    MEDICAL CARE

Harvey was a pretrial detainee awaiting trial on a simple burglary charge at all relevant times about which he complains. Before the Fifth Circuit's decision in Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest. Bell v. Wolfish, 441 U.S. 520, 539 (1979); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992). The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." Pfannstiel

---

[1] Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

v. City of Marion, 918 F.2d 1178, 1186 (5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

In Hare, however, the Fifth Circuit held:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650. The Fifth Circuit explained that for the Bell "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645. If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply. Id.

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by

prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Hare, 74 F.3d at 650. "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). The Farmer definition applies to Eighth Amendment medical claims. Reeves, 27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show deliberate indifference to his "serious medical needs" to satisfy this prong. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Mendoza, 989 F.2d at 193.

Further, the plaintiff must establish that the defendant possessed a culpable state of mind. Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference

13

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. If the court finds that one of the components of the test is not met, it need not address the other component. Davis, 157 F.3d at 1005.

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Board of the County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 117 S. Ct. 1382, 1391 (1997) . . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citations omitted) (emphasis added). "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291.

In the instant case, plaintiff's pleadings as expanded by his testimony establish that nothing more than episodic acts or omissions as defined in Hare are at issue in this case. Thus, the "deliberate indifference" standard applies and plaintiff must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. In this case, Harvey fails to allege facts sufficient to satisfy the stringent "deliberate indifference" standard.

Harvey's testimony negates any inference that defendants acted with deliberate indifference to his serious medical needs. Initially, it cannot be concluded that the

conditions he described presented serious medical needs that posed a substantial risk of harm during his incarceration at the jail. Harvey's testimony about his diabetic condition did not identify any serious risk of harm or any actual serious harm resulting from the alleged denial of treatment sufficient to rise to the level of serious medical needs for purposes of constitutional analysis. Even assuming that plaintiff's medical condition was a serious condition for constitutional purposes, he has alleged facts, confirmed by the medical records, that negate any inference of deliberate indifference by jail officials. Plaintiff's complaint as amended by his testimony shows that he received constitutionally adequate medical care while incarcerated at OPP when he was provided with regular examinations and medication. Greer v. Tran, 2005 WL 428856 (5th Cir. Feb. 24, 2005) (no deliberate indifference to serious medical needs where plaintiff was tested for and diabetes mellitus ruled out in prisoner who ultimately died after falling into a diabetic Keto acidotic coma); Harris v. Donaldson, 71 F.3d 876, 1995 WL 725438, at *2 (5th Cir. Nov. 3, 1995); (no deliberate indifference where prisoner received medical treatment for diabetes, including blood sugar level monitoring, insulin doses and other attention, rendering his Section 1983 medical care claim merely a "quarrel with the quality and quantity of his medical treatment" for diabetes); Hall v. Thomas, 1998 WL 404386 (S.D. Tx. Jan. 16, 1998), aff'd, 190 F.3d 693, 697 n. 2 (5th Cir. 1999) (district court's dismissal

of prisoner's Section 1983 claim concerning medical treatment for diabetes abandoned on appeal, otherwise affirmed).

While it is clear from plaintiff's allegations and testimony that he is not satisfied with the timeliness, quality or effectiveness of his medical care, it is equally clear that the medical care provided was substantial, reasonable and constitutionally adequate. Certainly, no finding of deliberate indifference to serious medical needs can be made based on this record. This conclusion applies to Dr. Gautreaux's refusal to provide him with the treatment Harvey alleged he was entitled to receive after the physician reached the medical judgment that plaintiff was "malingering."

> [T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Deliberate indifference is an extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted). No such showing has been made on the current record.

First, mere delay in receiving care is not in and of itself a constitutional violation. Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006); Mendoza, 989 F.2d at 195; Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990). Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs.

Wilson, 501 U.S. at 298.  The delay about which Harvey complains did not cause "a life-long handicap or permanent loss" sufficient to constitute a serious medical need for constitutional purposes.  See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long handicap or permanent loss, the medical need is serious.'")); Wesson, 910 F.2d at 283-84 (minor delay in escorting injured prisoner to prison infirmary for treatment of swollen wrists with some bleeding cannot be construed as deliberate indifference to serious medical needs).  No such permanent loss resulting from delay has been shown in this case.

Second, contentions like Harvey's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim.  "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see also Marksberry v. O'Dea, 173 F.3d 855, 1999 WL 98533, at *2 (6th Cir. Jan. 28, 1999) (plaintiff who alleged that treatment received for his broken hand was inadequate failed

to state constitutional violation, when he was examined by physician and received x-rays and medication); Bryan v. Endell, 141 F.3d 1290, 1291 (8th Cir. 1998) (although delay in treating plaintiff's broken hand made surgery impractical and may have been negligent, it did not establish constitutional violation); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); Wesson, 910 F.2d at 284 (allegations establishing provision of medical treatment found inconsistent with inference of deliberate indifference); Williams v. Browning, No. V-03-157, 2006 WL 83433, at *1, *3 (S.D. Tex. Jan. 11, 2006) (Rainey, J.) (inmate with diabetes, hypertension, anxiety and chronic knee ailment who alleged that he was unable to obtain his medications timely, but did not establish any substantial harm from the delay, failed to state a claim for deliberate indifference).

For all of the foregoing reasons, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

III.  VERBAL ABUSE

Plaintiff's allegations that both Deputy Burns and Dr. Gautreaux cursed him or made other derogatory or nasty remarks to him are not cognizable under Section 1983. Robertson v. Plano City, 70 F.3d 21, 24 (5th Cir. 1995). The Robertson court noted that

"in the Eighth Amendment context, 'mere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations.'" Id. (citation omitted); accord Watson v. Winborn, No. 02-10984, 67 Fed. Appx. 241, 241 (5th Cir. 2003); Calhoun v. Hargrove, 312 F.3d 730, 734 (5th Cir. 2002); Vessell v. Gusman, No. 06-2294, 2006 WL 2067723, at *2 (E.D. La. July 19, 2006) (McNamara, J.) (citing Calhoun, 312 F.3d at 734; Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997); Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993)).

"Claims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment . . . ." Jackson v. Liberty County, 860 F. Supp. 360, 363 (E.D. Tex. 1994). "[C]itizens do not have a constitutional right to courteous treatment by the police. Verbal harassment and abusive language, while unprofessional and inexcusable, are simply not sufficient to state a constitutional claim under 42 U.S.C. § 1983." Slagel v. Shell Oil Refinery, 811 F. Supp. 378, 382 (C.D. Ill. 1993), aff'd, 23 F.3d 410 (7th Cir. 1994). In this case, plaintiff's allegations of verbal abuse do not rise to the level of a constitutional violation, and these allegations fail to state a claim upon which relief may be granted.

IV.   EXCESSIVE FORCE

Harvey complained that Deputy Burns used unconstitutionally excessive force against him in their altercation on March 1, 2008 when Burns tried to take away Harvey's

blanket. Harvey was a pretrial detainee on that date, which was about one week before his conviction and release from incarceration on probation. Thus, his claim that Burns used excessive force against him is properly characterized as asserting a violation of his substantive due process rights under the Fourteenth Amendment. Petta v. Rivera, 143 F.3d 895, 911 (5th Cir. 1998) ("[W]here a plaintiff's excessive force claim, whether he be a prisoner, arrestee, detainee, or an innocent bystander of tender years, falls outside the specific protections of the Bill of Rights, that plaintiff may still seek redress under the due process clause of the Fourteenth Amendment.") (citing Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)); accord Gutierrez v. City of San Antonio, 139 F.3d 441, 452 (5th Cir. 1998).

Under the Fourteenth Amendment standard, the court must ask whether defendants' "actions caused [plaintiff] any injury, were grossly disproportionate to the need for action under the circumstances and were inspired by malice rather than merely careless or unwise excess of zeal so that [they] amounted to an abuse of official power that shocks the conscience." Petta, 143 F.3d at 902 (citation omitted). The "'extent of injury is one factor' to be considered [along] with 'the need for application of force, the relationship between that need and the amount of force used' and other factors, . . . [but] the extent of injury is only one relevant factor and cannot be exclusively determinative

under the . . . substantive due process approach." Id. (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

To the extent the Eighth Amendment standard applies, the appropriate inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Hudson, 503 U.S. at 6; accord Petta, 143 F.3d at 901; Flowers v. Phelps, 956 F.2d 488, 491 (5th Cir. 1992). Plaintiff need not show a significant injury to establish a constitutional violation; however, the extent of the injury may be considered in determining whether the force used was malicious, wanton or unnecessary. Hudson, 503 U.S. at 7; Flowers, 956 F.2d at 491. In addition, "[t]he Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) (quoting Hudson, 503 U.S. at 9-10).

The law "require[s] a plaintiff asserting an excessive force claim to have suffered at least some form of injury, . . . we do not permit a cause of action for every contact between a citizen and a police officer. In just about every conceivable situation, some amount of force or contact would be too nominal to constitute a constitutional violation. When the force used is insufficient to satisfy the legal standard necessary for recovery,

the amount of force is de minimis for constitutional purposes." <u>Williams v. Bramer</u>, 180 F.3d 699, 703 (5th Cir. 1999) (quotation omitted). To determine whether injury caused by excessive force is more than de minimis for constitutional purposes, the context in which the force was used and all the surrounding circumstances must be examined. <u>Id.</u>

Harvey's written submissions and testimony fail to establish either a Fourteenth or an Eighth Amendment violation. The force described by Harvey was minimal and the resulting injuries he described were slight. Harvey's testimony established that the force was applied when Harvey resisted Burns' attempt to replace his heavy blanket with a lighter one. The altercation ended within three or four minutes. At most, the force used by Burns resulted in very minor injuries and was in no way malicious, sadistic, shocking to the conscience, or grossly disproportionate to the need for action under the circumstances. I cannot conclude that Burns' physical contact with Harvey, even accepting as true the circumstances described by Harvey, rises to a level sufficient to state an actionable claim of unconstitutionally excessive force claim under Section 1983.

### RECOMMENDATION

For all of the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __23rd__ day of January, 2009.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE